**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 1:12-CR-00058-JOF-ECS |
| MAURICE DESHAWN DEAL | : | |

**REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE**

**I.**

**Introduction**

This matter is before the court on the motions to suppress evidence filed on behalf of Defendant, Maurice Deal. [Docs. 13, 14]. The motions to suppress came on for evidentiary hearing on May 16, 2012. The transcript has been filed [Doc. 30] and the motions have been fully briefed. [Docs. 32, 33, 34]. The motions are now therefore ready for a report and recommendation. For the reasons stated herein, the undersigned **RECOMMENDS** that the motions to suppress be **DENIED**.

**II.**

**Issues**

Defendant is charged in a one-count indictment with being a four-time convicted felon found in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(e). [Doc. 1]. The firearm was found in his possession during a traffic stop on March 8, 2011.

The motions to suppress challenge the admissibility of the evidence seized during the traffic stop and statements made by the Defendant during the stop.

Defendant does not argue, for purposes of the motion, that the initial stop was not valid. [Doc. 32 at 5]. In that regard, the DeKalb County Police officer who made the stop testified that he pulled the vehicle over for speeding after he used a laser speed detection device to receive a reading of 59 mph in a 45 mph zone. Defendant argues that the search of the vehicle, after the initial stop, was unconstitutional because the officer did not have voluntary consent to search. Defendant further argues that he was in custody and entitled to Miranda[1] warnings after he was asked to step out of the car. He contends that placing him in the back of the patrol car, knowing that there was a microphone recording what was said, was the functional equivalent of interrogation, requiring suppression of Defendant's un-Mirandized statements made while in the patrol car.

### III.

### __Facts and Circumstances__

The record of the hearing developed the following facts: on March 8, 2011, around nine o'clock in the evening, Officer Timothy

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

2

Dunn was on patrol at a stop light on Buford Highway in Northeast Atlanta at the intersection of Buford Highway and Clairmont Road. [T.7-8].[2] He saw a white Tahoe make a turn onto Buford Highway from Clairmont and accelerate at a rate of speed that he believed to be in excess of the speed limit. [T. 12]. He activated his laser detection device and measured the speed at 59 mph. [T. 12, 19]. The speed limit was 45. [Id.]. When the light changed, Officer Dunn pursued the Tahoe North on Buford Highway and pulled the vehicle over just as it was turning into a nightclub called "Follies." [T. 20]. The encounter was recorded on the patrol car's camera device. See Gov't Exh. 1.[3]

Officer Dunn exited his vehicle and approached the Tahoe. By the time he reached the driver's side, the driver had opened the window. [T. 33]. As he approached and asked the driver for his license and proof of insurance, Officer Dunn smelled the strong odor of burnt marijuana coming from the vehicle. [T. 33, 91]. Officer Dunn testified that he had been trained in police training classes to recognize the smell of burned marijuana and had encountered drivers in the field whose cars have smelled of marijuana. [T. 34].

---

[2] Reference to the transcript of the evidentiary hearing, [Doc. 30], will be made as follows: "[T. (Page)]."

[3] Reference to Gov't Exh. 1, which is a video disc of the traffic stop, will be made by citing to the elapsed time shown on the video disc, e.g., "[V. 1:15]."

AO 72A
(Rev.8/82)

He also testified that he has an allergic reaction to marijuana if exposed to a large quantity in a close environment. [T. 34, 92]. In this case, Defendant was lighting a cigarette as Officer Dunn approached the window. In view of the fact that he smelled marijuana, Officer Dunn suspected that Defendant may have been lighting the cigarette to mask or cover up the marijuana odor. [T. 35-36].

After obtaining the license and registration, Officer Dunn then returned to his vehicle to run the license. It came back clear. He then returned to the vehicle and asked Defendant to step out of the car, whereupon he performed a pat-down. During the pat-down he advised him that he had been stopped for speeding. [V. 7:00]. He then asked Defendant if there was anything in the vehicle he needed to know about – "no guns, knives, drugs, hand grenades?" [T. 48, 95]; [V. 7:05]. Defendant answered, "No." Officer Dunn then asked Defendant if he minded if he searched the vehicle, to which Defendant answered, "No, sir," indicating to the officer that he didn't mind. [T. 49-50, 95]; [V. 7:11]. Officer Dunn asked him again if he minded. [T. 49]; [V. 7:17]. His response on the video to this inquiry is somewhat inaudible and apparently incomplete, but he appears to respond in the negative. Officer Dunn testified that he believed from Defendant's responses that Defendant had consented.

4

[T. 50, 97]. The officer also believed he had probable cause to search. [T. 97].

Officer Dunn then began to inspect the vehicle, but because Defendant was "getting more nervous," he elected to call for another unit to come to the scene. [T. 50]; [V. 8:18]. After Officer Lester arrived, Officer Dunn continued the search and promptly found marijuana in the center console area. [T. 53]; [V. 11:00]. Once the marijuana was found, Officer Dunn immediately handcuffed Defendant and placed him under arrest. [T. 105-106]; [V. 11:15]. After searching his pockets, Officer Dunn put Defendant in the back seat of the patrol car. [V. 12:50].

The patrol car was equipped with a microphone and recording device, and Defendant can be heard making statements, ostensibly to himself, as he sat in the back. Officer Dunn testified that he left the microphone on "to collect evidence because people might talk back there." [T. 107]. Most of the statements were unintelligible to the undersigned from listening to the video. The government apparently claims that incriminating statements were made. See Gov't Exh. 1-A. During this time, the officers found a handgun pushed in between the driver's seat and the console. [T. 56]. It was fully loaded, with one round in the chamber. [T. 56]. When the serial number was run, the weapon was identified as stolen. [Doc. 42]. The officers continued to search the vehicle, looking for

AO 72A
(Rev.8/82)

drugs, "because the smell of marijuana was so strong." [T. 57]. Later, the officers took Defendant out of the patrol car and searched him again, confiscating the money that he had on him as well as his watch and jewelry. [T. 60]. He was then transported to jail, where he arrived at about 11:30 p.m. [T. 62].

**IV.**

**Discussion**

**A. Validity of the Search**

Defendant argues that he did not voluntarily consent to the search of the vehicle. Law enforcement officers, without a warrant, may conduct a search based upon an individual's voluntary consent, and evidence discovered and seized during such a search may be admitted at trial. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44 (1973). Consent may be express or implied but need not necessarily be knowing and intelligent. Id. at 241, 93 S. Ct. at 2055.[4] In order for consent to be deemed voluntary, it "must be the product of an essentially free and unconstrained choice." United States v. Zapata, 180 F.3d 1237, 1241 (11th Cir. 1999)(quoting United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989)). "[W]here the validity of a search rests on consent, the

---

[4] Knowledge of the right to refuse consent, however, is one factor to consider in evaluating voluntariness. Schneckloth, 412 U.S. at 227, 93 S. Ct. at 2047-48.

6

State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." Florida v. Royer, 460 U.S. 491, 497, 103 S. Ct. 1319, 1324 (1983); Schneckloth, 412 U.S. at 233, 93 S. Ct. at 2051; Zapata, 180 F.3d at 1241; United States v. Edmondson, 791 F.2d 1512, 1515 (11th Cir. 1986).

Whether or not voluntary consent has been given is a question of fact determined by examining the totality of the circumstances. Schneckloth, 412 U.S. at 227, 93 S. Ct. at 2047-48; United States v. Gonzales, 71 F.3d 819, 830-32 (11th Cir. 1996); Tukes v. Dugger, 911 F.2d 508, 517-18 (11th Cir. 1990). Various factors may be considered in determining whether consent is voluntary, including: (1) an individual's knowledge of the right to refuse consent; (2) his or her youth, intelligence, lack of education, and language ability; (3) the degree to which the defendant cooperates with the police; (4) the defendant's attitude about the likelihood of discovery of illegal substances; and (5) the length of detention and the nature in which the defendant is questioned, including physical punishment or other coercive police behavior. No single factor is dispositive. Schneckloth, 412 U.S. at 226-27, 93 S. Ct. at 2047-48; United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001); United States v. Butler, 102 F.3d 1191, 1197 (11th Cir. 1997).

7

In this case, the officer asked Defendant if there was "anything in the vehicle that [he] needed to know about – guns, knives, drugs, grenades?" [V. 7:08]. On the video, Defendant appears to respond in the negative. [V. 7:08]. He is then asked if he minds if the officer searches the vehicle, to which Defendant appears to answer "No, sir." [V. 7:12]. He is then asked again if he minds if they search, and he again appears to accede, somewhat reluctantly, although the audio on the video is not clear. [V. 7:17]. The officer also testified from his recollection that Defendant said, "No," in response to the question, "Do you mind if I search the vehicle," and also told him at some point, "Go ahead." [T. 49-50].

Defendant argues that Defendant's answers were ambiguous and are insufficient to signify voluntary consent. To the contrary, however, the undersigned concludes that Defendant did consent and that the consent was voluntary. He answered "No, sir" to the question, "Do you mind if I search the vehicle," [V. 7:11], and, when asked again, appears to respond, "No." [V. 7:13-16]. Although his body language suggests that he is not happy with what is going on, he does not object to the search at this time or at any other time while the search is being conducted. [Id.]. Considering the circumstances of the encounter as a whole - the fact that it occurred in a public place, without any physical punishment or

8

coercive police behavior, Defendant's relative maturity, his cooperation with the officers, the short period of time from the initiation of the stop and the request for consent – all of these circumstances support the finding of voluntary consent to the search of the vehicle. Schneckloth, 412 U.S. at 226-27, 93 S. Ct. at 2047-48.

But even if the consent was equivocal, as Defendant argues, this search can be affirmed on another basis. Officer Dunn testified that he smelled the strong odor of burnt marijuana in the car as soon as he approached the open driver's side window. [T. 33, 91]. He testified to the basis of his knowledge and experience regarding the smell of marijuana and noted his own allergic reaction to it when exposed to him in large or concentrated quantities. [T. 34]. He pointed to the fact that Defendant immediately lit a cigarette as suspicious, suggesting an effort to mask the smell. [T. 36]. Furthermore, immediately after taking Defendant out of the vehicle, frisking him, and asking for consent to search, Officer Dunn counsels Defendant that if he tells him there is marijuana in the vehicle and only a small amount of marijuana is found in the car, he will ticket him and let him go on his way; otherwise, if he finds marijuana after Defendant tells him there is none, he will arrest him and tow the car. [V. 7:47-55]. These statements, made before he searched, are consistent with the officer having smelled

9

marijuana, as he said he did.  I find that Officer Dunn's testimony was credible.[5]

It is well established in this Circuit and elsewhere that the recognizable smell of marijuana gives rise to probable cause to support a warrantless search.  See United States v. Tobin, 923 F.2d 1506, 1512 (11th Cir. 1991); United States v. Lueck, 678 F.2d 895, 903 (11th Cir. 1982); United States v. Smith, No. 10-15561, 2012 WL 2864409, at *3 (11th Cir. July 12, 2012); United States v. Hamilton, 299 F. App'x 878, 882 (11th Cir. 2008); United States v. Johnson, 630 F.3d 970, 974 (10th Cir. 2010)("[T]he odor of marijuana by itself is sufficient to establish probable cause."); United States v. Lynn, 592 F.3d 572, 583 (4th Cir. 2010); United States v. Cherry, 436 F.3d 769, 772 (7th Cir. 2006)(collecting cases).  Under these circumstances, there being credible testimony that the officer smelled marijuana as soon as he approached the window of the Defendant's vehicle, the officers were justified in searching the vehicle under the so-called "automobile exception" to the warrant requirement.  See Carroll v. United States, 267 U.S. 132, 160-62, 45

---

[5] Defendant points out that there is no evidence that anything but unburnt marijuana was found and seized from the vehicle. Defendant is correct that there is no evidence that burnt marijuana was found.  On the other hand, neither side asked Officer Dunn if any ashes or other remnants were found.  The record is silent on the point.  This silence does not, however, change my conclusion that the officer's testimony was credible.

S. Ct. 280, 287-288 (1925); United States v. Brown, 634 F.3d 435, 438 (11th Cir. 2011) (warrantless search valid where police had probable cause after defendant admitted he had been smoking and police smelled odor of marijuana coming from car). The motion to suppress the search of the vehicle should, accordingly, be **DENIED**.

**B. Admissibility of Defendant's Statements**

Defendant argues that he was in custody from the moment he was asked to step out of the car and that all statements he made thereafter without benefit of Miranda should be suppressed, including statements he made while he was alone in the back seat of the patrol car. The government contends that Defendant was not in custody until he was placed in handcuffs after the marijuana was found in the vehicle and that the statements made in the back seat of the patrol car were volunteered and not elicited by questioning or any functional equivalent of interrogation.

A person taken into custody must be advised of his right to remain silent and of his right to counsel before he may be interrogated. Miranda, 384 U.S. at 479, 86 S. Ct. at 1630. Custody involves the deprivation of "freedom of action in any significant way." Id. at 444, 86 S. Ct. at 1612. "Even if a person has not been arrested, advice of Miranda rights is required if there is a restraint on freedom of movement 'of the degree associated with a formal arrest.'" United States v. Muegge, 225 F.3d 1267, 1270 (11th

11

Cir. 2000)(quoting Minnesota v. Murphy, 465 U.S. 420, 430, 104 S. Ct. 1136, 1144, reh'g denied, 466 U.S. 945, 104 S. Ct. 1932 (1984). The initial determination of custody depends on the objective circumstances of the interrogation. Stansbury v. California, 511 U.S. 318, 323, 114 S. Ct. 1526, 1529 (1994). "The only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442, 104 S. Ct. 3138, 3151 (1984).

"[I]n order for a court to conclude that a suspect is in custody, it must be evident that, under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with a formal arrest' to such extent that he would not feel free to leave." Muegge, 225 F.3d at 1270 (quoting United States v. Phillips, 812 F.2d 1355, 1360 (11th Cir. 1987)). Under this objective standard, "the reasonable person from whose perspective 'custody' is defined is a reasonable innocent person." United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996)(citing Florida v. Bostick, 501 U.S. 429, 437-38, 111 S. Ct. 2382, 2388 (1991).

Ordinary traffic stops do not involve custody for purposes of Miranda, unless the stopped motorist is subjected to treatment during the traffic stop that amounts to a restriction of freedom to

12

a degree associated with a formal arrest.  Berkemer, 468 U.S. at 440, 104 S. Ct. at 3150.  In determining whether a defendant's freedom was curtailed "to a degree associated with formal arrest," the courts consider the totality of the circumstances, including whether the officers brandished weapons or touched the defendant, whether the officers used a language or tone indicating that compliance with their orders could be compelled, and the location and length of the detention.  United States v. Luna-Encinas, 603 F.3d 876, 881 (11th Cir. 2010).

In this case, Defendant was not in custody until Officer Dunn placed him in handcuffs some eleven minutes into the traffic stop, after he found the marijuana.  Until that time, Defendant's freedom had not been curtailed to a degree associated with formal arrest. Although he had been patted down for weapons, no weapons had been displayed by the officers; Defendant was not handcuffed; the duration of the stop had been short up until he was cuffed – only eleven minutes had expired, according to the video.  See [V. 11:07]. Furthermore, as found above, the duration of the stop had been legitimately extended by Defendant's consent to search and by the officer's probable cause to believe that Defendant was in possession of marijuana that was in the vehicle.  At no time before he was handcuffed does the record reflect that Defendant objected to the stop, or the search, or asked to leave.  Throughout the encounter,

13

the officers were polite and professional.  The undersigned concludes on this record that, for the short time Defendant was detained while Officer Dunn ran the tag and investigated further by searching the vehicle with consent, Defendant was not in "custody" for purposes of Miranda.

Defendant was in custody, indeed under arrest, at the point at which he was placed in handcuffs and then placed in the rear seat of the patrol car.  Defendant was never advised of his rights under Miranda while on the scene of the stop.  However, Miranda only applies where "a person in custody is subjected to either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S. Ct. 1682, 1689 (1980).  In this case, Officer Dunn did not *expressly question* or interrogate Defendant while he was in the back of the patrol car.  But interrogation is not limited simply to questioning:

> Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent.  That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.  The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.

Id., 100 S. Ct. at 1689-90.

14

In this case, the undersigned concludes that the act of placing Defendant alone in the back of his patrol car, even with the expectation that he might make incriminating statements, does not amount to the functional equivalent of express questioning. I conclude that any statements Defendant made while alone in the car were spontaneous and volunteered. Voluntary and spontaneous comments by an accused, even after Miranda rights are asserted, are admissible evidence if the comments were not made in response to government questioning. Cannady v. Dugger, 931 F.2d 752, 754 (11th Cir. 1991); see also Innis, 446 U.S. at 299-300, 100 S. Ct. at 1689 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.")(quoting Miranda, 384 U.S. at 478, 86 S. Ct. at 1630); United States v. Young, 377 F. App'x 965, 969 (11th Cir. 2010) (quoting Cannady).

Here, I agree with the observations of the Eighth Circuit in a similar case: "[The officer] may have expected that the two men would talk to each other if left alone, but an expectation of voluntary statements does not amount to deliberate elicitation of an incriminating response." United States. v. Hernandez-Mendoza, 600 F.3d 971, 977 (8th Cir. 2010)(activation of recording device after leaving defendant alone in police vehicle not functional equivalent of interrogation). "Officers do not interrogate a suspect simply by

15

hoping that he will incriminate himself." Arizona v. Mauro, 481 U.S. 520, 529, 107 S. Ct. 1931, 1936 (1987)(allowing defendant to speak to wife in presence of officer while tape recording not interrogation or functional equivalent); see also Stanley v. Wainwright, 604 F.2d 379, 382 (5th Cir. 1979)(Fifth amendment rights not violated after arrest and placement in back seat of police car without Miranda and clandestinely tape recorded).[6]

Officer Dunn had legitimate security reasons for recording sights and sounds within his vehicle, Mauro, 481 U.S. at 528, 107 S. Ct. at 1936, and it is well established for Fourth Amendment purposes that Defendant had no reasonable expectation of privacy in the back seat of a police patrol car. See United States v. Gilley, 43 F.3d 1440, 1441 (11th Cir. 1995); United States v. McKinnon, 985 F.2d 525, 527-28 (11th Cir. 1993). But cf., United States v. Chanthasouxat, 342 F.3d 1271, 1281 (11th Cir. 2003)(statements made in back seat of patrol car inadmissible where initial stop violated Fourth Amendment, even though no expectation of privacy). In sum, the undersigned concurs with the observations of the Eighth Circuit in Hernandez-Mendoza, where the Court was presented with similar facts:

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

16

> The requirements of <u>Miranda</u>, including warnings before custodial interrogation, "were designed to vest a suspect in custody with an added measure of protection against coercive police practices." <u>Innis</u>, 446 U.S. at 301, 100 S. Ct. at 1690. From the perspective of the [defendants], we see nothing so coercive about the trooper's simple act of leaving them alone in the patrol car that would justify characterizing [the officer's] behavior as interrogation.

<u>Id.</u>, 600 F.3d at 977.

Based upon the above discussion and analysis, the undersigned **RECOMMENDS** that the motion to suppress statements be **DENIED** insofar as it pertains to statements made spontaneously while Defendant was alone in the patrol car, and not in response to express questioning. On the other hand, any statements made in response to questioning after Defendant was handcuffed and put under arrest should be suppressed as obtained in violation of <u>Miranda</u>.

**V.**

**Conclusion**

In conclusion the undersigned **RECOMMENDS** that the motions to suppress evidence be **DENIED**, and that the motion to suppress statements be **GRANTED in Part** and **DENIED in Part**, consistent with the above discussion in Part IV.B.

In addition, it appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore **ORDERED** that this case be and is hereby **CERTIFIED** as ready for trial.

17

**SO REPORTED AND RECOMMENDED**, this 10th day of August, 2012.

            ***S/ E. Clayton Scofield III***
            E. Clayton Scofield III
            **UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/82)